# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RINALDO BANKSTON, #M-31614, | ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 17−cv–00722−NJR ) |
| SGT. SIMMONS, MAJOR COOPER, C/O CAGE, and VANDALIA CORRECTIONAL CENTER, | ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Rinaldo Bankston, an inmate who is currently incarcerated at Shawnee Correctional Center ("Shawnee"), brings this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights at Vandalia Correctional Center ("Vandalia"). (Doc. 1). Plaintiff claims that he was subjected to a racially motivated verbal and physical assault by C/O Cage, Sergeant Simmons, and Major Cooper on May 18, 2017. (Doc. 1, pp. 5-8). He seeks monetary damages against these officers and the prison. (Doc. 1, p. 4). Although he transferred from Vandalia before filing this action, Plaintiff also seeks injunctive relief, in the form of criminal charges against the defendants, an investigation into racially motivated assaults at Vandalia, and termination of all racist correctional officers.[1] *Id*.

---

[1] Although requests for injunctive relief often become moot when an inmate transfers from a prison, *Lehn v. Holmes*, 364 F.3d 862, 871 (7th Cir. 2004), this is not always the case. *Maddox v. Love*, 655 F.3d 709, 716 (7th Cir. 2011) (citing *Ortiz v. Downey,* 561 F.3d 664, 668 (7th Cir. 2009) (request for injunctive relief moot unless plaintiff can demonstrate realistic possibility that he would again be incarcerated under conditions described in complaint). The Court offers no comment on this request for relief, other than to say that an inmate cannot compel a criminal prosecution. *Town of Castle Rock, Colo. v. Gonzales,* 545

1

The Complaint is now subject to preliminary review under 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009). The Complaint survives screening under this standard.

## The Complaint

All of the events giving rise to this action occurred at Vandalia on May 18, 2017. (Doc. 1, pp. 5-8). On that date, C/O Hall denied Plaintiff's request to shop at the prison commissary. (Doc. 1, p. 5). When Plaintiff asked him why, the officer allegedly became irate and began screaming. *Id*. Plaintiff told C/O Hall that he "didn't have to speak to [him] in such a manner"

---

U.S. 748, 768 (2005); *Sandage v. Bd. of Comm'rs of Vanderburgh Cnty.,* 548 F.3d 595, 597 (7th Cir. 2008).

because Plaintiff had done nothing wrong. *Id*. Plaintiff explained that he was "badly in need of soap and asked the officer to let him purchase it. *Id*.

In response, C/O Hall demanded Plaintiff's identification card and informed him that he would be going to the "yard office." (Doc. 1, p. 5). Plaintiff gave C/O Hall his identification card. *Id*. As C/O Hall escorted Plaintiff to the yard office, C/O Cage and Sergeant Simmons met them and took Plaintiff the rest of the way. (Doc. 1, p. 6).

Approximately forty-five minutes after he arrived at the office, C/O Cage handed Sergeant Simmons a disciplinary write-up on Plaintiff. (Doc. 1, p. 6). Sergeant Simmons ordered Plaintiff to take a seat in a plastic chair in Major Cooper's office. *Id*. As he did so, Major Cooper stood up from behind his desk and said, "Who the fuck do you think you are, I never told you to sit the fuck down 'bitch.'" *Id*. Plaintiff told Major Cooper that he was just following Sergeant Simmons's orders. *Id*. Major Cooper responded, "[S]hut the fuck up Bitch, speak when ask[ed] to speak." *Id.* He then said, "[S]ee that's y'all problem you niggas think you can do as you want but not here at Vandalia!" *Id*. Major Cooper spoke loudly and, as he did so, spit in Plaintiff's face. *Id*.

Sergeant Simmons then handed Major Cooper the disciplinary report. (Doc. 1, p. 6). After he read it, Major Cooper said, "C/O Hall has been working here many years an[d] you dare speak to him in that manner." *Id*. Plaintiff assured Major Cooper that the report must be false, although he admittedly had no idea what it said. *Id*.

Major Cooper then placed his right hand around Plaintiff's neck and attempted to choke him. (Doc. 1, p. 6). When Plaintiff tried to "snatch away," C/O Cage grabbed him and placed him in a headlock. *Id*. Major Cooper then said, "'Nigga Boy,' you're about to go to Jail bitch." (Doc. 1, p. 7). At that, Sergeant Simmons grabbed Plaintiff by the right hand and reached for his

3

cuffs. *Id*. After the sergeant secured the cuffs around Plaintiff's wrists, he began beating Plaintiff in the back of his head with a closed fist. *Id*. As he did so, C/O Cage continued to hold Plaintiff in a headlock. *Id*. Sergeant Simmons then grabbed the cuffs and hoisted Plaintiff upwards, almost breaking his wrists and arms, before he began twisting the cuffs. *Id*. Plaintiff yelled, "[W]hat ya'll going to do kill me?" *Id*.

Sergeant Simmons then instructed C/O Cage to release Plaintiff. (Doc. 1, p. 7). As Plaintiff stood up, the sergeant asked C/O Cage for a pair of cuffs. *Id*. Sergeant Simmons wrapped the cuffs around his knuckles and jammed them into the middle of Plaintiff's back, grinding and twisting them into his spine. *Id*. Sergeant Simmons and C/O Cage hit Plaintiff in the back of his head, back, arms, and legs repeatedly. *Id*. While doing this, they made comments about "how they don't like niggas and if it was up to them they would take [Plaintiff] an[d] other Blacks out by the pond in the back of the prison and beat and hang us all." *Id*.

Plaintiff alluded to another encounter he had with an officer the month before and to other racially motivated assaults on inmates at the prison. (Doc. 1, pp. 7-8). These incidents left Plaintiff feeling shocked, devastated, fearful, and mentally distraught. *Id*. Plaintiff alleges that he did not feel safe at Vandalia. *Id*. He has since transferred.

## Discussion

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), the Court deems it appropriate to organize the claims in Plaintiff's *pro se* Complaint (Doc. 1) into the following counts:

**Count 1** - Eighth Amendment claim against C/O Cage and Sergeant Simmons for using excessive force against Plaintiff at Vandalia on May 18, 2017.

**Count 2 -** Eighth Amendment claim against Major Cooper for not only failing to intervene and protect Plaintiff from the use of excessive force by C/O Cage and Sergeant Simmons on May 18, 2017, but also encouraging it.

**Count 3 -** Fourteenth Amendment equal protection claim against Defendants for singling Plaintiff out for punishment, which included a verbal and physical assault on May 18, 2017, because of his race.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designations do not constitute an opinion regarding the merits of each claim. **Any claims that Plaintiff intended to raise in the Complaint that are not addressed in this Order should be considered dismissed without prejudice from this action.[2]**

## Count 1

The Eighth Amendment protects prisoners from the wanton and unnecessary infliction of pain. *See* U.S. CONST., amend. VIII. The intentional use of excessive force by prison officials against an inmate without penological justification constitutes cruel and unusual punishment under the Eighth Amendment. *Wilkins v. Gaddy*, 559 U.S. 34 (2010); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000). The "core requirement" of an excessive force claim is that the prison guard "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). *See also Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *Santiago v. Walls*, 599 F.3d 749, 757 (7th Cir. 2010). The relevant inquiry focuses on the amount of force used and not on the injury that resulted. *Reid v. Melvin*, -- F. App'x --, 2017 WL 3601723 (7th Cir. Aug. 22, 2017) (citing *Hudson*, 503 U.S. at 1, 9).

---

[2] This includes an Eighth Amendment deliberate indifference to medical needs claim. Plaintiff mentioned nothing about the need for medical treatment or the denial of medical care following the assault.

5

The Complaint articulates a plausible excessive force claim against C/O Cage and Sergeant Simmons under this standard. Plaintiff alleges that he was cuffed and acting in compliance with the officers' orders at the time they assaulted him on May 18, 2017. (Doc. 1, pp. 5-8). Even so, the officers used force against him in a manner that was allegedly malicious and sadistic and not in a good faith effort to maintain or restore discipline. Count 1 shall receive further review against both defendants.

**Count 2**

Liability may also arise under the Eighth Amendment when a prison official has a realistic opportunity to intervene and protect a plaintiff against another officer's use of excessive force, but fails to do so. *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005). It is well-established that this duty extends to the protection of prisoners from the use of excessive force by other officers. *See Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir. 1972); *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994) (collected cases); *Lanigan v. Vill. of E. Hazel Crest*, 110 F.3d 467, 477 (7th Cir. 1997). Officials "incur liability for the breach of that duty when they [a]re 'aware of a substantial risk of serious injury to [an inmate] but nevertheless fail[ ] to take appropriate steps to protect him from a known danger.'" *Rice ex rel. Rice v. Corr. Med. Serv.*, 675 F.3d 650, 669 (7th Cir. 2012) (citing *Guzman v. Sheahan*, 495 F.3d 852, 857 (7th Cir. 2007) (quoting *Butera v. Cottey*, 285 F.3d 601, 605 (7th Cir. 2002)); *see also Santiago*, 599 F.3d at 758-59.

Major Cooper not only failed to intervene and protect Plaintiff from harm, he arguably encouraged C/O Cage and Sergeant Simmons to assault Plaintiff. Before and during the physical assault on Plaintiff by these subordinate officers, Major Cooper verbally assaulted him using foul and racially offensive language. The Seventh Circuit has held that "simple verbal harassment," without more, does not constitute cruel and unusual punishment. *DeWalt v. Carter*, 224 F.3d 607

6

(7th Cir. 2000). More recently, the Court has clarified that "purely verbal" harassment can, under some circumstances, amount to cruel and unusual punishment. *Beal v. Foster*, 803 F.3d 356, 357-58 (7th Cir. 2015). A claim may arise where the harassment threatens both physical and severe psychological harm. *Id*. at 357-59 (pain sufficient to support claim of cruel and unusual punishment may be physical or psychological).

Major Cooper made statements that were racially derogatory, even as C/O Cage and Sergeant Simmons beat Plaintiff. (Doc. 1, pp. 5-8). As the officers did so, "they" told Plaintiff that they preferred to take him and "other Blacks out by the pond in the back of the prison and beat and hang [them] all." (Doc. 1, p. 7). Plaintiff was fearful enough that he asked the officers if they planned to kill him. *Id*. In response, they continued to beat him as Major Cooper watched. *Id*. Plaintiff describes subsequent shock, fear, and distress. *Id*.

By failing to intervene in the assault and/or actually encouraging it, Major Cooper's conduct gives rise to an Eighth Amendment claim for cruel and unusual punishment based on the allegations in the Complaint. *Beal*, 803 F.3d at 357-59. Accordingly, Count 2 shall proceed against this defendant.

**Count 3**

Plaintiff asserts that he, like other African American inmates, was singled out for harsher punishment at Vandalia because of his race. To establish a *prima facie* case of discrimination under the Fourteenth Amendment's Equal Protection Clause, a plaintiff must show that he "is a member of a protected class," that he "is otherwise similarly situated to members of the unprotected class," and that he "was treated differently from members of the unprotected class." *Brown v. Budz*, 398 F.3d 904, 916 (7th Cir. 2005) (quoting *McNabola v. Chicago Transit Auth.*, 10 F.3d 501 (7th Cir. 1993) (citing *McMillian v. Svetanoff*, 878 F.2d 186, 189 (7th Cir. 1989))).

7

The allegations in the Complaint satisfy these requirements for screening purposes. Plaintiff alleges that he is a member of a protected class based on his race, that he was otherwise similarly situated to members of the unprotected class such as other white inmates seeking commissary items, and he was intentionally subjected to harsher discipline because of his race. In essence, he alleges that he was beaten and threatened because of his race. Although the Court cannot say whether he will prevail on this claim, the Court also cannot dismiss it at this time. Count 3 shall receive further review against all three defendants.

## Party Subject to Dismissal

Vandalia Correctional Center shall be dismissed from this action with prejudice. The prison is a division of the Illinois Department of Corrections ("IDOC"), which is a state government agency. The Eleventh Amendment bars suits against states in federal court for money damages. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001); *Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 788 (7th Cir. 1995) (state Department of Corrections is immune from suit by virtue of Eleventh Amendment); *Hughes v. Joliet Corr. Ctr.*, 931 F.2d 425, 427 (7th Cir. 1991) (same). Neither the IDOC nor Vandalia qualifies as a "person" within the meaning of the Civil Rights Act. *See Will*, 491 U.S. at 71. Accordingly, neither is subject to a suit for money damages under § 1983. *Id*.

To the extent Plaintiff seeks injunctive relief, the Clerk shall be directed to add Vandalia's Warden, in order to carry out any injunctive relief that is ultimately ordered. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (When injunctive relief is requested, it is generally appropriate to name the government official who is responsible for carrying out the requested relief, in his or her official capacity.). But the warden, and not the prison, is the

appropriate party. Therefore, Vandalia Correctional Center shall be dismissed as a party to this action.

**Pending Motions**

**1.      Motion for Leave to Proceed** *in forma pauperis* **("IFP Motion") (Doc. 2)**

Plaintiff's IFP Motion shall be addressed in a separate court order.

**2.      Motion to Appoint Counsel (Doc. 3)**

Plaintiff's Motion for Appointment of Counsel shall be **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for a decision.

**Disposition**

The Clerk is **DIRECTED** to **ADD** the **WARDEN of VANDALIA CORRECTIONAL CENTER**, in his or her official capacity only, as a Defendant in CM/ECF for purposes of carrying out any injunctive relief that is ordered.

**IT IS HEREBY ORDERED** that Defendant **VANDALIA CORRECTIONAL CENTER** is **DISMISSED** with prejudice from this action.

**IT IS ORDERED** that **COUNT 1** is subject to further review against Defendants **C/O CAGE** and **SERGEANT SIMMONS**; **COUNT 2** is subject to further review against Defendant **MAJOR COOPER**; and **COUNT 3** is subject to further review against Defendants **C/O CAGE, SERGEANT SIMMONS,** and **MAJOR COOPER**. These claims are **DISMISSED** without prejudice against any defendants not named in connection with each claim herein for failure to state a claim upon which relief may be granted.

As to **COUNTS 1, 2,** and **3**, the Clerk of Court shall prepare for Defendants **C/O CAGE, SERGEANT SIMMONS,** and **MAJOR COOPER**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The

Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for further pre-trial proceedings, including a decision on Plaintiff's Motion to Appoint Counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge **Wilkerson** for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: September 18, 2017**

*[signature: Nancy J. Rosenstengel]*

**NANCY J. ROSENSTENGEL**
**United States District Judge**